66b 437
21ap311

# TRUMAN ARMSTRONG *vs.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

A railroad company cannot be said to be wholly free from negligence when it calls upon passengers to disembark, for the purpose of going to its passenger depot, without any warning or information that a train is about to cross the path, and immediately, and before a passenger has time to get beyond the path of the expected train, allows the locomotive, silently, and without ringing the bell, or giving any alarm, to rush upon and crush him.

*Held* that under such circumstances, it was the duty of the conductor of the train upon which the plaintiff was a passenger, and who directed the latter to leave the train, knowing that he would naturally look and go towards the passenger depot, in a direction that would bring his back towards the train approaching, to warn him of the danger, if not to see that he escaped it.  Or, that it was the duty of the conductor of the approaching train to stop his train before crossing the path which led from any of the passenger cars of the other train, towards the depot, until he had ascertained that all passengers who desired to stop at that depot had passed over the track.

*Held, also*, that the questions of negligence on the part of the defendant, and

contributory negligence on the part of the plaintiff, were properly left to the jury.

The judge was requested to charge the jury that " if the plaintiff got off the train upon which he was a passenger, before it came to a stop, and if by remaining on the train till it had stopped, he would not have sustained the injury, then he was guilty of negligence which contributed to the injury, and cannot recover." *Held* that this request was properly refused.

A judge is not bound to charge in language selected by the counsel, however appropriate it may be. If, on the whole, the jury has not been misled, but has been fairly instructed in language embracing all the material questions, it is sufficient. *Per* TALCOTT, J.

APPEAL from a judgment for the plaintiff upon a verdict at the Wayne county circuit, and from an order denying a new trial on the minutes.

*Edward Harris*, for the appellants.

*S. B. McIntyre*, for the respondent.

*By the Court*, TALCOTT, J.    This action is brought for running over the plaintiff by one of the defendants' locomotives through the alleged negligence of the servants of the defendants.    The facts are substantially as follows:   The plaintiff had resided at Macedon, Wayne county, but contemplated removing to Palmyra.    He had been on a visit to Dutchess county.    On his return to Wayne county he arrived at Albany in the night time, and desiring to go to Palmyra, he purchased a ticket for that place of the defendants' ticket agent at Albany, and got upon the train which the ticket agent informed him was the train for him to take.    It would seem that the train upon which the plaintiff was instructed to and did embark did not stop at Palmyra; at all events when the train had arrived near Newark, in Wayne county, the conductor informed the plaintiff that the train did not stop at Palmyra, and that he, the plaintiff, must get off at Newark.    At Newark the passenger station of the defendants is on the southerly side

of the double track. The train in which the plaintiff was, was running upon the northerly track. On arriving at Newark the car in which the plaintiff was, having passed a short distance westerly and beyond the passenger depot, the conductor said to the plaintiff this is Newark, you must get off here, and immediately preceded the plaintiff, who followed him within a distance of about three feet, and both there got off the cars, the conductor going down towards the rear of the train and the plaintiff starting in a south-easterly direction diagonally across the southerly track towards, and for the purpose of going to, the building of the defendants used for the reception of passengers. By the defendants' time tables there were due at the Newark station, at the time when the accident occurred, (which was on the morning of the 13th of May, between 7 and 8 o'clock,) two passenger trains from opposite directions, two minutes apart. The train from the west was due two minutes ahead of the train upon which the plaintiff was a passenger. On the morning of the accident the train on which the plaintiff was, arrived at Newark a little in advance of its time, while the other train, from the west, running on the southerly track, was a little behind its due time. The track is straight and clear for about a mile east and west of the Newark station, and the conductors of the two trains each saw the other train, and knew the time each was due. While he was upon the southerly track, going in a south-easterly direction, the train from the west, without ringing the bell or otherwise giving any alarm, silently crept upon the plaintiff, threw him down and dragged him partly under and partly upon the cow-catcher for a distance of some twenty feet or more, breaking his thigh and doing him other serious injuries. The plaintiff did not discover the train approaching from the west until the instant it was upon him, when too late to retreat or to escape by going forward. And his attention was then called to it

by the conductor and perhaps others hallooing to him "lookout." The plaintiff was a man of about 60 years of age and somewhat infirm, and having traveled all night was asleep, or in a drowsy state, as was noticed by the conductor, when notified to leave the train. He had no acquaintance with the trains, or with the Newark station, except such as was derived from his having traveled from Macedon to Dutchess county six or seven times in as many years. Such are the facts which must be considered to have been established by the verdict of the jury, which was in favor of the plaintiff for the sum of $2,500. The appellants' counsel claims that the plaintiff should have been nonsuited, upon the ground that there was no evidence of negligence on the part of the defendants, and that the plaintiff himself was guilty of contributory negligence. We think on the other hand that the evidence on these questions was properly left to the jury.

It cannot be that a railroad company can be said to be wholly free from negligence when it calls upon passengers to disembark for the purpose of going to its passenger depot, and without any warning or information that a train is about to cross the path, immediately and, before the passenger has time to get beyond the path of the expected train, silently rush upon and crush him. Under the circumstances of this case we think it was clearly the duty, as a matter of ordinary prudence and humanity, for the conductor of the train upon which the plaintiff was a passenger, and who directed the plaintiff to leave the train, and who knew that he would naturally look and go towards the passenger depot in a direction that would bring his back towards the train approaching from the west, to warn him of the danger, if not to see that he escaped it. Or, it was the duty of the conductor of the train approaching from the west to stop his train before crossing the path which led from any of the passenger cars of the other train to-

Armstrong *v.* New York Central and Hudson River R. R. Co.

wards the depot, till he had ascertained that all passengers desiring to stop at that depot had passed safely over the southerly track.

As to the contributory negligence, the appellants' counsel relies chiefly upon the case of *Gonzales* v. *The N. Y. and Harlem R. R. Co.*, (38 *N. Y.* 440.) An extract from the opinion concurred in by the court in that case will show that the facts upon which the court there relied to establish the negligence of the deceased, were wholly different from those which are presented in this case. Dwight, J., in the only opinion delivered in the case of *Gonzales*, says: "the deceased was frequently a passenger by the train from which he alighted at the same moment, and lived in sight of the crossing. He must have known that the express train was due at that point, within one minute, and, allowing for a very slight delay on the part of the accommodation train, that the express train was liable to pass at the same moment. * * * It cannot be said that he was required to alight at the point where he did, and between the two tracks; so far from this, it seems to me proof of additional negligence on his part that he did so. It is very doubtful whether the train by which he was a passenger had stopped at all when he got off, and if it had it is certain that its stop was only momentary, and not for the purpose of discharging its passengers. It had not reached its stopping place, and when the deceased fell it was moving on toward the platform where it usually discharges its passengers. It is true the station house was on the west side of the track, but there was a platform for the up trains on the east side. And the deceased was not going to the station house, but to his own house by a shorter route."

We think the charge was correct, and as favorable to the defendant as required by the law and by the evidence. As usual in such cases, the counsel for the defendant presented to the court numerous abstract

propositions with a request that the court should instruct the jury in accordance therewith. Most of them were agreed to by the court. And we discover no error in the refusal to charge in accordance with those which were refused. A request, which was declined by the court, and which is particularly insisted upon by the defendants' counsel, was as follows: "Also that if the plaintiff got off the train upon which he was a passenger, before it come to a stop, and if, by remaining on the train till it had stopped, he would not have sustained the injury, then he was guilty of negligence which contributed to the injury, and cannot recover." Some slight evidence had been given tending to render it doubtful whether the car had come to a full stop when the plaintiff got off. The conductor of the train, however, testified that when he got off, the car had stopped, and it was undisputed that the plaintiff followed the conductor within about three feet. Besides this, the direction of the conductor to the plaintiff to get off, and his preceding the plaintiff, who he knew was closely following him in pursuance of his direction, without any notice or warning, or attempt to check the plaintiff, rendered the question of negligence of the plaintiff arising from the doubt as to whether the car had come to a full stop, one proper to be determined by the jury. Moreover it certainly does not appear, as a question of law, that whether the cars had come to a full stop or only slowed so as to allow of the passengers alighting with safety under ordinary circumstances, would have produced any difference in the result. Taking the whole charge together, including the requests of the defendants' counsel, which were acceded to by the court, we see nothing in either the charge or refusals of which the defendants can complain. The court is not bound to charge in language selected by the counsel, however appropriate it may be. If on the whole the jury has not

been misled, but has been fairly instructed in language embracing all the material questions, it is sufficient.

The judgment and order appealed from must be affirmed. (*a*)

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, January 7, 1873. *Mullin* and *Talcott*, Justices.]

(*a*) Affirmed by Court of Appeals, on above opinion. *See* 53 *N. Y.* 623.