WILLIAM H. VAN OSTRAN, BY GUARDIAN, PLAINTIFF, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, DEFENDANT.

*Negligence — duty of a railroad company to provide ways for its passengers to safely leave its trains — negligence of a passenger not contributing to the injury does not bar an action by him.*

The defendant's depot at Auburn is on the southerly side of its track, and extends from State street on the west to Chappell street on the east, a distance of about 298 feet. At about 11 A. M. on November eleventh the plaintiff, who was about sixteen years old, arrived at Auburn from the west in one of the defendant's trains and alighted from the north side of the rear platform of the last car. The train consisted of a baggage car, a mail car and three or four passenger cars, and the rear of the rear car stood near the center of State street. There were no platforms or conveniences for alighting at this place on either side of the car. On the north side was a side track, upon which, to the east of State street, stood an engine and train of cars which were usually started to go westward upon the arrival of the train upon which the plaintiff came, without waiting for the passengers thereof to alight. The plaintiff had never been at the place before, and he testified that just as he left the car by the north side a passenger came upon the platform from that side. The plaintiff was struck by the engine moving westward upon the side track and injured. He might have seen the engine by looking to the east on alighting. *Held*, that a verdict in his favor should not be set aside.

That the fact that at the time he left the train it was still moving very slowly, and did not stop until just after he left it, would not prevent him from recovering damages for his injury, provided that the jury should find that his so doing was not the cause of, and did not contribute to his injury.

MOTION by the defendant for a new trial on exceptions taken at Cayuga Circuit, and ordered to be heard in the first instance at the General Term; also from an order denying a motion for a new trial made upon the ground of newly discovered evidence.

*W. H. Adams*, for the defendant.

*John D. Teller*, for the plaintiff.

BRADLEY, J.:

Action for personal injuries suffered by the plaintiff which he alleges were occasioned by the negligence of the defendant. On the 11th day of November, 1882, the plaintiff was a passenger on the

defendants train of cars from Canandaigua to Auburn, which arrived at the latter place about eleven o'clock A. M. The plaintiff then went out of the car and got off the north side and was proceeding to walk away, when he was struck by an engine, knocked down and his foot crushed so as to require amputation. He recovered a verdict for $10,500.

The contention on the part of the defendant is : 1. That the injury was without negligence of the defendant; and 2. That the negligence of the plaintiff, caused or contributed to produce it. The plaintiff was then sixteen years of age, had never before been there, and one object of his visit on this occasion was to see the State prison. He was in the rear car of the train consisting of three or four passenger cars, one mail car and a baggage car, and exclusive of the engine and tender was from 280 to 340 feet in length. The line of the railroad at Auburn was easterly and westerly, and the depot on the southerly side extending from State street on the west to Chappell street on the east. The distance between the centers of those streets was 298 feet. When the trains stopped the rear end of the rear car was near the center of State street.

This was a single track road, but on the north side of that occupied by this train was a side track (entering the main track west of State street), on which stood another train headed westerly (the engine of which was east of the rear end of the train in which the plaintiff was). And when the plaintiff, having got off the train, had gone a short distance in walking away, the engine of the train on the side track, moving westerly, struck him and caused the injury. There was no platform or anything in the street when the plaintiff got off the train, to indicate that there was any preference of the side he should alight from the car. Both sides of the platform of the car were open and steps leading from them alike. He saw the State prison to the north, and got off and started on his way toward that. It was customary for these trains to meet there, and for the one on the side track to move out westerly on the arrival of this train from the west, without waiting for passengers to alight from the latter, because they usually went off on the southerly side of it.

The fault of the defendant in this case was that it furnished no guide, extending to the rear end of the train, to the passenger, that he

should depart south from it and gave him no information to that effect, and exposed him to danger from, and by moving, the other train before he had reasonable time to get over the side track. It was the duty of the defendant in some manner to furnish facilities of egress of passengers from its trains at stations with safety, and if their protection requires them to leave on one side only, to fairly so indicate in such manner as to enable them by the exercise of reasonable care to make no mistake in that respect.

The assumption on the part of the defendant that no passenger would go off the steps on the north side of the car, and therefore that it could simultaneously with the arrival of the train going east at the station, move its train west on the adjacent north track, was in this instance a want of care which permitted the jury to find that the defendant was not free from negligence. (*Gonzales* v. *N. Y. and H. R. R. R. Co.*, 39 How., 407; *Terry* v. *Jewett*, 17 Hun, 395; affirmed, 78 N. Y., 338; *Brassell* v. *N. Y. C. and H. R. R. R. Co.*, 84 N. Y., 241.) It is said, on the part of the defendant, that the location of its depot at Auburn and its facilities were fixed and so limited by statute that it was not permitted to do more than it did in furnishing means of departure of passengers from trains there, and therefore the defendant is excused and relieved from the charge of negligence in not having more extended facilities for that purpose, and reference is made to Laws of 1841 (chap. 184, § 2); Laws of 1850 (chap. 239), and Laws of 1853 (chap. 76). Without any special consideration of those statutes it is sufficient to say that the attention of the trial court was not called to them nor was any question specifically raised in that respect on the trial. And on this review exceptions only are considered. And it may be added that if restriction denies to the defendant the right to afford suitable means by way of structures to guide its passengers from its trains in that city, greater precaution is necessarily required of it to guard them against danger to which they may be exposed in consequence.

The more serious question is whether the plaintiff was free from contributory negligence. It does not appear that he took any means to ascertain from which side he should leave the car, other than to see that there were steps leading from the north side, and that, as was apparent, the place to get off was

in the middle of the street, and no choice was necessarily pre-sented other than the fact that there was a railroad track on the north side, but that gave no apparent obstruction. There were walks to be seen north of the track leading across and from State street. He could by looking easterly as he left the car have seen the approaching train on the side track. But seeing nothing to deter him from getting off that side he had the right to assume that he would be exposed by the defendant to no danger while departing from the train, and his failure to turn and look was not necessarily negligence on his part. This question is one which has had much consideration by the courts. And after some diversity of opinion in *Gonzales* v. *New York and Harlem Railroad Company* it seems to have been settled in this State that in view of the invitation deemed given by a railroad company to passengers to take and depart from trains at stations, they may rely upon the care of the company to protect them while doing so from danger of other passing trains in so far as not to require of them the same degree of active caution and diligence as would be imposed upon them when crossing the tracks on other occassions. (*Gonzales* v. *N. Y. and H. R. R. Co.*, 39 How., 407; *Dickens* v. *N. Y. C. R. R. Co.*, 1 Keyes, 23; S. C., 1 Abb. Ct. App. Dec. 504; *Green* v. *Erie Ry. Co.*, 11 Hun, 333; *Terry* v. *Jewett*, 78 id., 395; affirmed, 78 N. Y., 338; *Brassell* v. *N. Y. C. and H. R. R. R. Co.*, 84 id., 241; *Armstrong* v. *N. Y. C. and H. R. R. R. Co.*, 66 Barb., 437.) And whether they could or ought to have observed and escaped the danger under the circumstances in case of injury is for the jury. And that rule applies in cases where the party sought to be charged as for negligence owes a duty to one injured under circumstances which permit the latter to assume that such duty has been or will be performed so as to expose him to no danger.

In such cases the question of contributory negligence is usually one of fact. (*Weston* v. *N. Y. and E. R. R. Co.*, 73 N. Y., 595; *Dobiecki* v. *Sharp*, 88 id., 203; *Hoffman* v. *N. Y. C. and H. R. R. R. Co.*, 13 Hun, 589; affirmed, 75 N. Y., 605; *Weed* v. *Ballston*, 76 id., 329.) But it applies with additional force when, as in the case at bar, it involved an element in the nature of invitation to the person injured whereby a sort of privity relation is produced which may characterize the duty as an undertaking.

It is contended that the exercise of care required of the plaintiff, would have advised him that the south side was that of egress from the train, and that as matter of law he was chargeable with negligence for not ascertaining that fact by the surrounding condition and circumstances. While it is true that passengers must assume some responsibilities and apply ordinary intelligence and understanding to their action in leaving the train on which they are passengers, they may be supposed to act on such information as the facilities furnished by the company for their guide on such occasions may give. They are required to act suddenly on the appearances which are afforded. If there is a platform provided to step on to within their view, they are to understand its purpose. If one side of the platform of the car is closed by a gate and the other not, they are advised that the latter is the one of egress, but when the steps on either side take the passengers into the center of a street, with no obstruction either way of departure, the stranger has only his convenience to direct him. The fact that hackmen were on the south side of the road ready to take passengers who desired to ride, would not necessarily furnish the plaintiff, if he had seen them, with information that he should get off that side. He wanted no hack. Nor was he required to delay getting off until others did to follow them. There is evidence tending to prove that he was one of the first out and off the car, and he says as he went down the steps he met a person coming up them on to the car.

In *Mitchell* v. *Chicago and Grand Trunk Railway Company* (12 Am. and Eng. R. R. Cases, 163) the train on which the plaintiff was a passenger stopped, as was usual, at a crossing just before reaching the station (the name of which having been called out), the plaintiff left her seat, went out, and as she was getting off, the train started and she fell and was injured. There was nothing at that spot to indicate a landing place, and the statute, as well as usage, required trains to come to a stop there.

The Michigan court held that negligence cannot be presumed where nothing is done out of the usual course of business, *unless that course is improper ;* that the starting of the train after such stoppage was contemplated by the law, " and that passengers must take the responsibility of informing themselves concerning the every day incidents of railway traveling." That case and *Michigan*

*Central Railroad Company* v. *Coleman* (28 Mich., 440), and *Pennsylvania Railroad Company* v. *Zebe* (33 Penn. St., 318; Id., 37 id., 420), are distinguishable from the one at bar, although they may not be entirely in harmony with some cases in this State. And the same may be said of *Bancroft* v. *B. and W. Railroad Company* (97 Mass., 275). There the plaintiff's intestate came into a station of defendant's double track railroad in a train and was landed on the side of the track required of trains going in that direction, and after the train left he started to go across the tracks at an unusual place, although facilities were furnished by the company for persons to cross, and before he reached the platform he was struck by a train going the opposite direction on the other track and killed. It appeared that the habit and place of crossing were known to him. The court held that the defendant, having provided a convenient and accessible place of egress from the platform on which he stepped upon leaving the train, was not liable, and that when a person unnecessarily goes upon a track, he voluntarily incurs the risk of consequences, etc.

In *Wheelwright* v. *Boston and Albany Railroad Company* (135 Mass., 225), the plaintiff resided near and north of the defendant's road, which was a double track with landing platforms on either side, that for the east bound trains was on the south side, and she to take such train, about the time it came in, proceeded to cross over the tracks from the north to the south side and was struck by a train going west. She did not go at the crossing provided by planking; but people frequently, without objection, had been in the habit of so crossing. The court held that " she was attempting to cross at a place not designed or adapted for crossing; at which the defendant held out no invitation or inducement for her to cross," and that she could not recover. That case is also distinguishable from this one in respect to the question under consideration and apparently so. There may seemingly be some difference in the views of the courts in the different States in respect to the measure and application of duty on the part of railroad companies required to protect persons proceeding to take and depart from trains as passengers, but that the relation of passenger is assumed when he gets his ticket and is properly proceeding to take the train, and does not terminate when he leaves the car, but continues until he has reasonable opportunity to leave the

train and roadway of the company after the train reaches the station to which he is entitled to be carried, is a generally adopted proposition. (*Warren* v. *Fitchburg R. R. Co.*, 8 Allen, 227.)

The case of *Siner* v. *Great Western Railway Company* (L. R., 3 Exch., 150; S. C., 4 id., 117) has not necessarily any application. There the passenger in alighting from a car at a place beyond the landing platform received an injury, and it was held that it was chargeable to the negligence of the plaintiff. It was daylight, and if it was a safe place to get off the injury was needless, and if she could not do so with safety it was apparent to her, and she was in fault in making the attempt to do so.

There is evidence to the effect that the bell of the engine on the north track was, and was not, sounded before the plaintiff was struck. The jury were authorized to find that it was not. That fact has no importance except as relates to the question of notice to the plaintiff of its approach and as bearing on the charge of his negligence. There is evidence tending to prove that the train which caused the injury moved quietly and at a low rate of speed when it approached the plaintiff. And the jury were authorized to find that he did not hear it. The question of the liability of the defendant on the whole evidence was one of fact for the jury. The defendant's motion for nonsuit was properly denied. The defendant's exception to the refusal of the court to charge that under the circumstances there was no assurance extended by the defendant to the plaintiff that he might alight on the north side of the train, etc., was not well taken and requires no further consideration. The jury in view of all the circumstances were enabled to conclude that the plaintiff was permitted to understand that his departure at and from the north side of the train in the place and manner he did was proper and safe, and that the defendant would do nothing to place him in danger while so doing. The court charged the jury that the plaintiff " unquestionably had the right to choose which side of the platform he should descend from. * * * The same opportunity, the same facilities, the same invitation was extended to him to alight on the north side as was extended to him to alight on the south side. It was not negligence on his part to alight on the north side of that train, other things being equal. * * * I submit to you whether he was guilty of negligence in leaving on

that side in view of the fact that there was a railroad track on that side."

The defendant's counsel excepted to the charge " that the plaintiff had the right to choose for himself which side of the car he would alight from." This exception as applied to the facts in this case was not well taken. The court described to the jury the situation as established by the evidence, State street, and the location in it of the rear end of the car from which the plaintiff alighted. It appears that there was nothing there to indicate a preference, or which indicated facilities of one side over the other for that purpose; either took him into the center of the street. The railroad track on the north side crossing the street was so guarded as not to interrupt passage over the street. And so far as it may have afforded any hesitation or notice, and had any bearing on the question of negligence of the plaintiff, the question was submitted to the jury for their consideration. And there seems to be nothing else to justify a conclusion of negligence on his part. involved in his selection of the north side as that to alight from the car. The arrival of the train at the place of the plaintiff's destination is announced, the train stops, he is required to leave it, the platform of the car is in the center of a public street in the midst of a city, in looking either to the north or to the south he sees the extending and uninterrupted street, his choice aided by no information or facilities other than that situation, which apparently is adapted to the convenience of passengers to depart either way, the railroad track on the north, and nothing else distinguishes for such purpose the appearance of the street on that from the other side. The jury have said that it was not such notice to him as to render the plaintiff guilty of negligence in alighting on that side. And it clearly was not negligence as matter of law.

There was evidence tending to prove that the train had come to a full stop before the plaintiff got off, and some to the effect that he alighted when it was in motion. The court charged the jury in that respect, that " whether he did or not, does not necessarily determine the question of his right to recover if you find the defendant was negligent. Even though he stepped off the train while it was in motion, that need not necessarily constitute negligence on his part which would preclude his recovering, unless that

stepping off while the train was in motion was the cause of or contributed to his injury. It is negligence for a passenger to step off from a train while it is in motion, but it is only such negligence as contributes to the injury that absolves the defendant from responsibility. If he was likely to be injured by stepping off after it stopped, that act of his did not contribute to his injury. Unless his staying in the car until it came to a stand would have saved him from accident and injury, his stepping off while the car was in motion can have no importance in the case. * * * If you find that he did step off while the cars were in motion, and that stepping off contributed to the injury, that becomes a most important and probably the decisive question in the case."

The exception taken by the defendant's counsel was "to the charge upon the subject of the negligence of the plaintiff in alighting from the car while it was in motion." It may be questionable whether this exception was not too broad and not sufficiently specific to raise the question designed by the counsel. (*Oldfield* v. *N. Y. and H. R. R. Co.*, 14 N. Y., 310, 314; *Walsh* v. *Kelly*, 40 id., 556; *Ayrault* v. *Pacific Bank*, 47 id., 570, 576; *McGinley* v. *U. S. Life Ins. Co.*, 77 id., 495.) The last part of the charge upon that subject the defendant's counsel would not deem objectionable. The proposition which might have been presented as the result of the plaintiff's alighting from the train while in motion, related to the effect of it upon his relation as a passenger and the diligence in consequence required of him after he left the car. There is no invitation or permission implied on the part of a railroad company to a passenger to leave a train while in motion, nor is it required to provide any means of protecting him from the consequences of doing so. When he does that voluntarily he ceases to be a passenger and cannot assume that his safety will be guarded by the company in so far as to enable him to neglect to use active means of care and precaution. (*Commonwealth* v. *Boston and Maine R. R. Co.*, 129 Mass., 500.) When he left this train and when injured the plaintiff was in a public highway, where he had the right to be, but if he left the train while in motion his relation to the company was no different than that of any other person in the street crossing the track. That question is not presented by the charge of the court; nor is it spe

cifically raised by the exception to the charge as made, or by any exception to refusal to charge.    The right to recover was not necessarily defeated by any negligence of the plaintiff in alighting from the train while in motion, but if his negligence caused or contributed to the injury it was in the failure to see and escape the approaching train after he alighted.    The act of getting off a train when in motion may be negligence, effectual to deny a recovery for an injury occasioned by it, but it is such only so far as applicable to the result or consequence of the act.    The negligence of a plaintiff which will defeat a recovery by him must contribute proximately to the injury ; and in this respect the rule is the same as that applicable to the negligence required to charge a defendant.    (Cooley on Torts, 679 ; *Trow* v. *Vermont C. R. R. Co.*, 24 Vt., 487 ; 58 Am. Dec., 191 ; *Lane* v. *Atlantic Works*, 111 Mass, 136–139 ; *Hill* v. *Winsor*, 118 id., 251 ; *Crain* v. *Petrie*, 6 Hill, 522 ; *Hoffnagle* v. *N. Y. C. and H. R. R. R. Co.*, 55 N. Y., 608 ; *Culhane* v. *Same*, 60 id., 133 ; *Lowery* v. *W. U. T. Co.*, Id., 198.)    There must be such connection between the act charged as negligence and the injury that it may be deemed the cause, or contribute to the result or injury, so that the latter may be treated as the natural and probable consequence of the negligent act.    They must constitute in some degree cause and effect.    When the plaintiff got from the train he landed in the street ; that caused no injury.    It afterwards came and was caused by his going upon and proceeding to cross the railroad track, and by that alone.    It does not distinctly appear how much time was occupied in reaching the place of injury, nor how far he went to receive it.    The most that can be charged against him is that he had severed his relation as passenger of the defendant, and was voluntarily going over the railroad at a street crossing in which both parties had an easement, and nothing more.    A different question might be presented if the injury had been sustained on premises exclusively those of the defendant.    It could not be held as matter of law that the injury was the proximate, natural or probable result of the plaintiff's departure (if so) from the train while in motion ; and that question was not taken from the jury.

There was no charge respecting the effect upon his relation as passenger if he left the train while in motion, nor was the court requested to charge in that respect, and the charge as made was not

inconsistent with the law applicable in such case. Nor can it be said as matter of law that if the plaintiff had remained on the train until it stopped that he would have escaped the injury, so as to make his early departure from it a reason for the accident, without reference to the question of its cause (which is the only legitimate inquiry). It is quite evident that the movement (if any) of the train after the plaintiff alighted was slow, momentary, and for a very short distance only, as several witnesses positively testified that it had come to a full stop before he went off, and a less number testified that it was then in motion; and all of them were in advantageous positions for observation.

In *Morrison* v. *Erie Railway Company* (56 N. Y., 302); *Gavett* v. *M. and L. Railroad Company* (16 Gray, 501); *Jewett* v. *Chicago and St. Paul Railroad Company* (6 Am. and Eng. R. R. Cases, 379), cited by the defendant's counsel, the injuries were occasioned by alighting from trains while in motion. But it has been held that such rule as matter of law is not applicable to that result under all circumstances. (*Eppendorf* v. *B., C. and N. R. R. Co.*, 69 N. Y., 195; *Filer* v. *N. Y. C. R. R. Co.*, 49 id., 47; *Terry* v. *Jewett*, 17 Hun, 400; affirmed, 78 N. Y., 338; *Armstrong* v. *N. Y. C. and H. R. R. R. Co.*, 66 Barb., 438, 442; affirmed, 64 N. Y., 635.) But in this case the question was for the jury to say whether any negligence on the part of the plaintiff contributed to, or to any extent constituted, the cause of the injury complained of, and it was fairly submitted to them.

The question whether the verdict was excessive in amount is not here for consideration. None of the exceptions seem to be well taken. The defendant's motion for a new trial on the ground of newly discovered evidence was properly denied by the Special Term. The evidence proposed to be given by witnesses was cumulative merely, and the fact that the location of the depot of the railroad of the A. and R. Railroad Company (which is part of the defendant's road) was restricted by Laws 1841 (chap. 184), must be presumed to have been known to the defendant; and although it is possible that the fact if presented may have caused omission or modification of some expressions in the charge of the court, it does not seem to have an importance in this case to justify the granting of a new trial. The order of the Special Term is therefore affirmed, and the

motion for new trial should be denied and judgment ordered for the plaintiff on the verdict.

Barker and Haight, JJ., concurred.

Motion for a new trial denied and judgment ordered for the plaintiff on the verdict.