* MARTHA J. PARSONS, as EXECUTRIX, ETC., OF KIRK P. PARSONS, DECEASED, RESPONDENT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Negligence — duty of a railroad company as to running trains through its stations, while passengers are alighting from trains—what care must be exercised by a passenger leaving a train before it stops.*

Where, upon the arrival of a passenger train in a station a passenger leaves the same before it has stopped, and before any invitation or notice to leave the train has been given, and, after alighting safely, attempts to cross tracks lying between the train and the station platform, he is bound to use the same care in attempting to cross such tracks as would be required of a person attempting to cross railroad tracks upon a highway.

As to a person so leaving one of its trains, it is not, as matter of law, negligence on the part of the company to run trains or engines rapidly past or through the station at such a time on such intervening tracks.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

The action was commenced in 1881. It was tried January, 1882, a verdict being rendered in favor of the defendant, and the plaintiff's exceptions being ordered to be heard in the first instance at the General Term. At the General Term a new trial was directed, the following opinion being delivered by SMITH, P. J.

SMITH, P. J. :

This action was brought to recover damages for the alleged negligent killing of the plaintiff's testator, Kirk P. Parsons, by the defendant at its Ferry street station in the city of Buffalo.

It appeared at the trial that the deceased, on the day of the accident took the defendant's train as a passenger, at the Terrace station, in Buffalo, about six o'clock in the evening. The defendant has two tracks at that section of the road and the train was on the easterly track. As the train entered the station grounds at Ferry street it was about three minutes late. Just before the train came to an

entire stop, but whilst it was moving no faster than an ordinay walk of a man, the deceased stepped from the forward platform of the car on which he stood and alighted safely on the space between the two tracks, nearly opposite the south end of the station-house.

He then walked beside the train in the direction in which it was moving, a distance of about forty-five feet, upon and partly across the westerly track, without looking up or down the track, when he was struck by a locomotive going to the south. There was evidence tending to show that the train which the deceased left continued to move slowly after the deceased alighted and before it stopped, about sixty feet and until the platform from which he alighted was beyond the north end of the station-house, and that it moved a few feet after the deceased was hit. When the deceased left the train no other passenger had alighted from it, and there had been no invitation of notice given by the defendant to passengers to leave the train. The judge charged the jury that if they found that the train from which Parsons alighted had not come to a stand when he was struck, the plaintiff could not recover. That instruction was excepted to, and it presents the main question in the case.

The counsel for the plaintiff seems to assume that this instruction was based upon the theory that the act of the deceased in stepping from the train while it was in motion was negligent, and was the direct and proximate cause of the injury. In view of the fact that the deceased alighted in safety, escaping all the risks that ordinarily attend an attempt to get off a railroad train while in motion, we do not think the charge was so intended, or that it could have been so understood by the jury. But the instruction was probably based upon the idea that if the deceased had not left the train before it stopped, he would have escaped the danger of being hit by the passing engine, as that had gone by when the passenger train came to a halt. But even in that view we think the instruction was erroneous and was calculated to withdraw the attention of the jury from the real issues. Those issues, as we conceive them, we will proceed to state.

The theory of the complaint is that at the time of the injury the deceased bore to the defendant the relation of a passenger, and that the defendant owed him, the degree of care to which that relation entitled him. It is true he had entered the train as a passenger, and was entitled to be carried safely and to have safe egress afforded

him from the train, at a proper place and a proper time. It was not a proper time to leave the train when it was in motion, and before the defendant had signaled passengers to alight, and the deceased having left the train under those circumstances could not claim any other degree of care from the defendant while he was attempting to cross its track, than if he had not previously borne to it the relation of a passenger.

But we do not think that circumstance created such a variance between the case proved and that alleged in the complaint as to prevent a recovery in case the injury was the result solely of negligence on the part of defendant.

The deceased having alighted safely, the circumstance that the train was still in motion was of no importance except as it bore upon the question of the defendant's negligence. It was held in *Terry* v. *Jewett* that it was negligence in a railroad company to run a train rapidly past a station at a time when a passenger train was due upon a track intervening between the passenger train and the station. (17 Hun, 396; S. C., affirmed, 78 N. Y., 338.) But if it was at a time when no train was due, or was at the station ready to receive or discharge passengers, obviously no negligence would attach to the bare act of running a train past a station. So, here, inasmuch as the deceased left the train before it had stopped, we think it cannot be said, as matter of law, that the running of the freight train past the station at that instant was a breach of any duty which the defendant owed to the deceased as a passenger, or otherwise. Whether the train was so managed or run as to constitute negligence was a question for the jury.

As to the question of negligence on the part of the deceased, we conceive that he was bound, under the circumstances, to use the same care in attempting to cross the track as would be required of a person attempting to cross upon a highway. As the place was one where passengers were accustomed to cross, he was not a trespasser, but as he attempted to cross before his train had stopped, he was not there at that time by the invitation of the company. And it was, therefore, a question for the jury to determine whether, in attempting to cross the track as he did he neglected to use due care and caution for his own safety.

But these questions were withdrawn from the jury by the instruc-

-tion referred to, and the case was made to turn upon what we con-
ceive to have been an immaterial issue.

New trial ordered, costs to abide event.

HARDIN and MACOMBER, JJ., concur.

Ordered accordingly.

A second trial was had in October, 1883, at which the jury dis-
:agreed.   A third trial was had in December, 1883, at which a ver-
dict in favor of the plaintiff for $5,000 was rendered, upon which
a judgment was entered.

Upon this appeal the following opinion was delivered by
HAIGHT, J.

*George C. Greene*, for the appellant.

*Charles B. Wheeler*, for the respondent.

HAIGHT, J.:

This action was brought to recover damages for the alleged negli-
gent killing of the plaintiff's testator, Kirk P. Parsons. The
deceased, on the day of the accident, took the defendant's train as
a passenger, at the city of Buffalo, for La Salle, in the county of
Niagara.   He proceeded on his journey as far as the station known
as the Ferry, where he had relatives living on the west side of the
track and adjoining the station, but opposite to the station house.
As the train entered the station grounds and before it came to a
-stop, the deceased stepped from the forward platform of the car on
which he stood, and alighted on the space between the east-bound
and west-bound tracks.   He then walked at a rapid gait by the side
of the train, and diagonally across the west-bound track, but before
passing the west-bound track he was struck by a freight train going
west and killed.

In the submission of the case to the jury the defendant's counsel
requested the court to charge the jury that "if Parsons was a pas-
senger from Buffalo to La Salle and got off the train at Ferry street
station, while the train was in motion, intending to return to the
train and continue his passage on the same train to La Salle, and
without looking or listening for approaching engines or trains

passed upon the west track where he was injured, the defendant, at the time he received such injury, owed him no duty as a passenger, and is not liable for a breach of duty to him as a passenger, and there could be no recovery in this action." The court refused so to charge, and the defendant's counsel excepted. Defendant's counsel also asked the court to charge " if, by looking, Parsons could have seen the train approaching and avoided injury, and failed to do so, he is chargeable with contributory negligence and no recovery could be had." The court refused so to charge, and defendant's counsel duly excepted to such refusal. Defendant's counsel also requested the court to charge "if Parsons would have seen the approaching locomotive in season to have avoided it, had he looked before attempting to cross, it will be presumed he did not look, and by omitting so plain and imperative a duty he will be deemed to have been guilty of negligence, which precludes a recovery." The court refused so to charge, and the defendant duly excepted.

Defendant's counsel also requested the court to charge that "Parsons was bound to look down the west track before going upon it. By 'down,' I mean to the north. If he failed to do so it was negligence on his part and no recovery could be had." This the court refused to charge and defendant's counsel duly excepted.

These exceptions and refusals to charge present the only questions which we deem it necessary to consider upon this appeal. It appears that this case has been once before considered by this court on a former appeal, and it was then held that it was not a proper time to leave the train when it was in motion and before the defendant had signaled passengers to alight; and that the deceased having left the train under those circumstances, could not claim any other degree of care from the defendant while he was attempting to cross its tracks, than if he had not previously borne to it the relation of passenger ; and that as to the question of negligence on the part of the deceased, he was bound, under the circumstances, to use the same care in attempting to cross the tracks as would be required of a person attempting to cross upon a highway. That the running of the freight train past the station before the passenger train had come to a halt for the discharge of its passengers was not, as a matter of law, a breach of any duty which the defendant owed to the deceased as a passenger or otherwise.

It is not our purpose, in considering this appeal, to adopt any other or different rule, for we believe it to have been correctly stated by this court on its former review of the case. The rule is now well settled that when a passenger train stops at a station to receive and discharge passengers, it may be assumed that the railroad company, in the exercise of ordinary care, so regulates the running of its trains as to afford safe ingress and egress to and from its trains to its passengers, and that they are not called upon to exercise that degree of vigilance which is required of persons crossing upon a highway. (*Terry* v. *Jewett*, 78 N. Y., 338 ; *Brassell* v. *The N. Y. C. and H. R. R. R. Co.*, 84 id., 243.)

This rule, however, does not exist until the passenger train has stopped for the purpose of receiving and discharging passengers. In the case of *Terry* v. *Jewett*, the passenger train had arrived at the depot and stopped. It then started to draw up in front of a platform, from which milk was to be taken on board. The deceased rushed from the depot across the track towards the passenger train, and she was struck and killed by a freight train passing between the depot and passenger train. In this regard the case is distinguishable from the one under consideration, for she might well have inferred by seeing the train in motion after it had once stopped that it was about to proceed upon its journey, not knowing that it was the intention to stop at the platform.

In the case of *Brassel* v. *The New York Central and Hudson River Railroad Company*, the train had stopped for the discharge of its passengers, and all or nearly all of the passengers had alighted from the train when the deceased stepped out and then turned to assist an old lady who was accompanying her from the train, and after doing so started to cross the other tracks of the corporation and was struck by a passenger train.

So that Parsons, by jumping from this train whilst it was in motion, before it had stopped for the discharge of its passengers, did so at his peril. He had no right at that time to assume that other trains would not be passing upon the west-bound track, and in attempting to cross the same he was bound to make use of the same vigilance as crossing upon a highway. If, however, he alighted from the train whilst it was in motion, and then continued to walk by the side of the train until it came to a stand, then we

are of the opinion that he, with the other passengers, would have the right to assume that no trains would run through the depot so as to endanger the passengers entering or leaving the train, and that he would not then be called upon to make use of the vigilance that he otherwise would.

It is now well settled that an individual crossing a railroad track upon a highway must both look and listen. He must make a vigilant use of his eyes and ears before crossing the track. (*Mitchell* v. *The N. Y. C. and H. R. R. R. Co.*, 2 Hun, 535; affirmed, 64 N. Y., 655; *Wilcox* v. *Rome, W. and O. R. R. Co.*, 39 id., 358–361; *Cordell* v. *N. Y. C. and H. R. R. R. Co.*, 75 id., 330–332; *Kellogg* v. *N. Y. C. and H. R. R. R. Co.*, 79 id., 72–76; *Becht* v. *Corbin*, 92 id., 658.)

Some of the requests to charge are within the precise language of the authorities, and if the rule is to prevail that the deceased was bound to exercise the same vigilance that he would in crossing a highway, these requests were proper and should have been charged. It is contended, however, on the part of the respondent that the case now differs from the one that was before this court upon its former review; that this case tends to show that the passenger train had come to a halt before Parsons attempted to cross the other tracks and before he was struck and killed. It does not appear, however, that the case was tried or submitted to the jury upon this theory. Several witnesses testify that the passenger train moved from a-half to the length of a coach after the freight train passed. The only testimony in the case tending to show that this was not so is the testimony that several passengers had got off of the train on the depot side when Parsons was struck. It appears that about 120 passengers got off at this station, and whether these persons had stepped from the train before it stopped or not does not appear. The respondent's witness, upon this question, when asked if the train had come to a stop when the freight train passed, answered, "Well, I can't testify positively as to that." This is all the testimony to which our attention has been called tending to show that the train had stopped.

The court in its charge to the jury stated that "he (Parsons) proceeded on the train to Black Rock Ferry station, and there, before the train had stopped, it would seem from the evidence, he alighted from the train and attempted to pass across the westerly

track in a diagonal direction towards the hotel, and as he stepped upon the westerly track was struck by the locomotive," etc. The respondent did not except to this charge or request the court to submit to the jury the question as to whether the passenger train had stopped or not prior to the passing of the freight train. It thus appears that this question was not left for the consideration of the jury. The jury was called upon to determine the question of the deceased's negligence upon the theory that he attempted to cross the defendant's tracks before the passenger train had stopped to discharge its passengers, and upon that theory of the case and in the absence of evidence that there was anything to distract his attention, the appellant was entitled to have the above requests charged.

Judgment and order reversed and a new trial ordered, with costs to abide the event.

BRADLEY, J., concurred; BARKER, J., concurred in the result.

Judgment and order reversed and new trial ordered, with costs to abide the event.